IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| STEVEN EARL BLAZEK,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | No. C08-3023-MWB<br><br>**REPORT AND RECOMMENDATION** |

## *I. INTRODUCTION*

The plaintiff Steven Earl Blazek seeks judicial review of a decision by an administrative law judge ("ALJ") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Blazek claims the ALJ erred in failing to consider the effects of his irritable bowel syndrome on his ability to work, and failing to consider his testimony regarding his impairments. (*See* Doc. No. 14)

## *II. PROCEDURAL AND FACTUAL BACKGROUND*

### *A. Procedural Background*

On September 6, 2006, Blazek filed an application for DI benefits, alleging a disability onset date of March 29, 2005. (R. 54-56) He claims he is disabled due to pain from a back injury, "30% hearing loss in both ears, irritable bowel syndrome, [and] heart problems." (R. 114)

Blazek's application was denied initially and on reconsideration. Blazek requested a hearing, and a hearing was held on August 3, 2007, before an Administrative Law Judge ("ALJ"). (R. 574-604) Blazek was represented at the hearing by attorney Steve Hamilton. Blazek testified at the hearing, and Vocational Expert ("VE") Roger Marquardt also testified. On November 30, 2007, the ALJ found that although Blazek suffers from severe

impairments, he retains the functional capacity to return to his past relevant work as a funeral director, and he therefore is not disabled. (R. 17-23) Blazek appealed the ALJ's ruling, and on March 12, 2008, the Appeals Council denied his request for review (R. 8-10), making the ALJ's decision the final decision of the Commissioner.

Blazek filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. (Doc. No. 2) In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. Blazek filed a brief supporting his claim on December 9, 2008. (Doc. No. 14) The Commissioner filed a responsive brief on February 5, 2009. (Doc. No. 15) The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Blazek's claim for benefits.

## B. Factual Background

### 1. Introductory facts and Blazek's hearing testimony

Blazek was born in 1952. He is between 5'11" and 6'0" tall, and he weighs about 250 pounds. He is right handed. He lives with his wife, who is a registered nurse. (R. 54, 582)

The ALJ noted Blazek "had good earnings through the years up until '06," working as a "cashier checker at a convenience store, corrections officer, and funeral director." (R. 579) Blazek was a corrections officer from 1997, until he quit work on March 28, 2005. He hurt his back on the job in January 2005, and had back surgery on April 22, 2005. According to Blazek, the first surgery lasted four or five hours, and due to findings during that procedure, he required a second surgery three days later that lasted eleven to twelve hours. (R. 585) Blazek stated his employment was terminated because his employer could not "accommodate [his] disabilities in the workplace." (R. 583) The job required him "to quell physical disturbances and have physical contact with inmates," "do

2

stairs," "run and respond to emergencies," and "carry or drag a person out of a cell or a building." (*Id.*) Blazek stated he incurred some permanent nerve damage in his arms from the second surgery that causes numbness in the fingers of his left hand, recurring on and off throughout the day and worsening as the day progresses. The numbness prevents him from contracting his fingers fully, and makes it difficult for him to type. By the end of the day, he even has difficulty holding a full glass of water. He also has intermittent numbness and shaking in his right hand, and intermittent numbness in his right foot. Blazek indicated his doctor explained that the numbness was caused by the extended length of time he was on the operating table, and there is no treatment for the condition. (R. 586-87, 592)

Cold weather and sitting for too long make his back pain worse. At night, he can only sleep for a couple of hours at a time before he has to get up and walk around for a few minutes. (R. 595) He indicated that standing, walking, and climbing stairs are all difficult for him. (R. 595) He can kneel down, but then he has difficulty getting back up. (R. 597) His medications help somewhat, but he stated he has "never been pain free" since his accident. (R. 596) He occasionally walks with a cane. (*Id.*) Regarding side effects from medications, Blazek stated he takes a heart medication that is a diuretic and causes him to need to urinate frequently. (R. 594)

Blazek stated he is able to walk no more than a block from his home before he has to stop and rest. On occasion he can walk farther, but his leg weakens as he walks and then he begins have problems with balance. (R. 590) He can stand on a hard surface for about five minutes at a time, but he has to move around a bit. If forced to stand still for more than five minutes, he stands just on his left leg; he cannot stand with both feet flat on the floor. If he does, then he experiences lower back and leg pain. (R. 591) He has not attempted to exceed his fifteen-pound lifting limitation due to fear of injuring himself further. (*Id.*) The record indicates Blazek stood up near the end of the ALJ hearing because he became uncomfortable and needed to change positions. (R. 598)

3

Blazek also suffers from irritable bowel syndrome. He does not experience symptoms daily, but when he does, he has to be able to reach a bathroom quickly. He estimated these attacks occur once or twice a month. (R. 593)

Blazek had a functional capacity evaluation on November 28-29, 2005. His understanding of the results of the evaluation are that he should avoid stairs, only stand for a few minutes at a time, change positions frequently from sitting to standing, and lift no more than fifteen pounds occasionally. (R. 588) He stated those limitations would prevent him from returning to any of the work he has performed in the last fifteen years. (R. 588-89) Since the accident, he has tried to work as a cashier, which he classified as light work, but he was unable to do the job. (R. 596)

In response to the VE's testimony (summarized *infra*) that an individual with a fifteen-pound lifting limitation should be able to return to Blazek's past work as a funeral director, Blazek stated that such a lifting limitation would preclude him from moving human remains from place to place and moving caskets around. His standing limitations would prevent him from standing in front of the church for ten to twenty minutes at a time as the job requires. He stated the job often required him to stand at the front door to greet people for hours at a time during visitations. He would be able to sit and make arrangements, but according to Blazek, none of the funeral homes would hire someone who could only sit and make arrangements, and not perform the other functions of the job. (R. 602)

## 2.  *Blazek's medical history*

Blazek claims he became disabled as of March 29, 2005. The record contains medical records prior to that time (*see* R. 134-206; 500-527; 543-73) that will be referenced here only insofar as they relate to his current claim for benefits.

Blazek apparently was suffering from low back pain with numbness and tingling in both feet for several years prior to his on-the-job accident. On March 3, 2002, he was

diagnosed with spinal stenosis at L3-4, L4-5, and bilateral sciatica. He was treated with IV steroids and obtained considerable improvement. (R. 526)

On January 25, 2005, Blazek was seen in the emergency room with complaints of pain on the right side of his neck, and in his right shoulder and elbow. He indicated he had been running at work, and had caught his sleeve on a door handle, almost jerking him off of his feet. X-rays showed no fracture or other abnormalities in his thoracic spine, right shoulder, or right elbow. He was treated with Toradol for pain, with slight relief. He was given a sling to wear "for comfort" for three to four days, and a prescription for Motrin 800 mg three times daily. (R. 207-08, 211-12)

On January 31, 2005, Blazek was seen with complaints of "back pain and symptoms radiating into the right lower extremity including right buttock, the lateral aspect of the right knee, somewhat more ventral, and the lateral aspect of the thigh as well as the right calf," as well as "weakness in the right leg." (R. 215) X-rays of Blazek's lumbar spine showed "[d]egenerative disc disease and spondylosis changes through the mid and lower lumbar spine, quite prominent at L4-5 and L5-S1, with first degree spondylolisthesis of L5 on S1." (R. 214) He was diagnosed with a herniated disc at L3-4, a bulging disc at L4-5, and first-degree spondylolisthesis of L5-S1. (R. 217) An MRI of his right shoulder demonstrated "partial subluxation of the tendon of the long head of the biceps and some increased fluid in the tendon sheath as well as some internal signal consistent with tenosynovitis and tendinopathy." (R. 219)

Blazek saw a pain management consultant on February 16, 2005, for management of ongoing back pain arising from his January 2005 work-related accident. He complained of "severe back pain with right leg pain along the right L4 dermatome distribution," radiating "down the lateral aspect of his calf." (R. 223) He received a lumbar epidural steroid injection at L4-5, with instructions to return for a second injection in one month if his condition had not improved. (R. 225, 226) He did well after the injection at first, with improvement in his back pain and the radiating pain in his right lower extremity.

5

However, about ten days later, he began developing "significant coolness of his right foot," accompanied by "worsening of his motor strength on the right side." (R. 233) Examination revealed decreased sensation in his right leg from the knee down, and diminished or no reflexes in the right ankle. Blazek was barely able to walk on his right heel and unable to walk on his right toes, which the doctor noted was "suggestive of L5-S1 radiculopathy." (R. 234) The pulses in his right foot were good, but the doctor noted that Blazek's right foot was definitely colder than his left. *Id.* The doctor prescribed Neurontin 300 mg three times daily and Vicodin for pain. He indicated that if Blazek's symptoms worsened within the next few days, then he should have a new MRI to determine whether his disease process was progressing. Otherwise, the doctor planned to continue treating Blazek conservatively. *Id.*

By March 2005, Blazek's doctor believed he needed to go forward with decompression surgery. However, he noted that even with surgery, Blazek's "motor loss may not return," and he could "still have ongoing pain due to permanent nerve damage associated with this injury." (R. 246) He doubted Blazek would be able to return to his previous level of work, and might "require permanent job modifications." (*Id.*) Blazek underwent back surgery on late April 2005. His staples were removed by his family doctor on May 10, 2005. Notes indicate Blazek was wearing a back brace and his incisions were healing well, although he still complained of significant pain. (R. 541)

Blazek underwent physical therapy from May 11 to July 5, 2005. He was extremely deconditioned when he began the therapy. He was noted to be "very compliant" with his exercise program. Although his stamina improved, he continued to have right sciatic pain when walking, as well as some right leg weakness. He continued to take prescription pain medication or Ibuprofen at night to help him sleep, and he rated his pain at 2 on a 10-point scale in the morning, and at 5 out of 10 in the evening. (R. 392)

Blazek saw his doctor for follow-up on July19, 2005. He "demonstrate[d] fairly significant improvement since he was last seen." (R. 460) He had switched from

ambulating with a walker to ambulating with a cane. The strength in his right lower extremity had improved. He had "made very little strides with added exercise." (*Id.*) The doctor recommended Blazek wean himself from wearing his hard lumbar brace, continuing with a soft brace. (*Id.*)

Blazek saw his doctor again on October 27, 2005. He complained of some increased pain with cold, damp weather, rating his pain at 3 out of 10. He was walking better but continued to have some reduced sensation in his right lower extremity. He still wore his soft lumbar brace when walking, but he indicated it was uncomfortable to wear the brace while sitting. The doctor noted Blazek would "be limited in his work choice," and he recommended Blazek "consider vocational training for a different job." (R. 458) Blazek indicated he wanted to go into court reporting, essentially a sedentary job. The doctor agreed this would be a viable option for Blazek. He further indicated Blazek was expected to reach maximum medical improvement about nine months postop. (*Id.*)

On November 4, 2005, Claude Koons, M.D. reviewed the record and completed a Physical Residual Functional Capacity Assessment form. (R. 396-403) He opined Blazek should be able to lift up to twenty pounds occasionally and ten pounds frequently; stand and/or walk, and sit, for about six hours each in a normal workday; and push/pull without limitation. He opined Blazek would have occasional postural limitations in all areas, but no other limitations of any kind. (*Id.*)

On November 28 and 29, 2005, Blazek underwent a Functional Capacity Evaluation ("FCE"). (R. 404-11) He was deemed to have given a "maximum, consistent effort" on the tests, and he was cooperative throughout. (R. 404) His body mechanics during the tests were noted to be "consistent with his symptoms and physical limitations." (R. 405) He demonstrated significant abilities in the areas of sitting tolerance, right upper extremity grip strength, and bilateral upper extremity coordination. Significant deficits were noted in his ability to lift/carry, push/pull; climb stairs, steps, or ladders; and positional tasks such as "elevated work, forward bending, trunk rotation, crawling, kneeling, crouching

and squatting." (*Id.*) The testing indicated Blazek's current capabilities would allow him to perform light work, described as eight hours per day, forty hours per week, with lifting up to fifteen pounds on an occasional basis. (*Id.*)

Blazek saw his doctor on December 12, 2005, to review the FCE. His doctor was in complete agreement with the findings of the FCE that indicated Blazek could perform light work. The doctor noted this would not allow Blazek to return to his previous work as a corrections officer. (R. 412)

On August 3, 2006, Blazek saw a doctor for "Health maintenance, coronary artery disease, chronic low back pain secondary to spinal stenosis." (R. 539) He stated he planned to start court reporting school in the fall, and expected the program to take two years to complete. He indicated he had tried to work at a Casey's but he was unable to tolerate the long hours of standing. Prescriptions were refilled for "nitro spray, Levsin SL #30, and Ativan 1 mg [as needed]," and he received a prescription for Hydrocodone to use as needed for back pain. (R. 538)

Blazek returned for follow-up on October 13, 2006. He had undergone an angiogram, and he stated that since the test, he had experienced "some numbness and tingling and burning on palpation to the area below the right femoral artery medially on the upper leg." (R. 538) His heart medication was continued, and he was scheduled for follow-up in two months with a plan to recheck his lipid levels. (R. 535)

Blazek saw his doctor on March 16, 2007, reporting that he was attending school full time and was "feeling well." (*Id.*) He stated the cold weather made him achy. (*Id.*) Notes indicate he had progressive changes in his fingernails, and cramping of the toes in his right foot and the fingers of his left hand. He complained of constipation and gas, and wondered if this was due to his medications. (R. 530) He was taking 800 mg of Ibuprofen three to four times daily, and 1 hydrocodone tablet per day. He also was taking Nexium for GERD. (R. 529-30) He was scheduled to see a surgeon for an upper GI endoscopy and colonoscopy. (R. 530)

On March 28, 2007, Blazek's doctor reported that Blazek was anemic. He prescribed an iron supplement. Notes indicate Blazek's cardiovascular surgeon instructed him to stop taking Ibuprofen for pain, and Blazek stated Tylenol did not give him enough relief. He was given a prescription for Tramadol 50 mg for pain, which he was instructed to take with Tylenol as needed. (R. 429-30)

### 3. *Vocational expert's testimony*

At the ALJ hearing, the ALJ asked Vocational Expert Roger Marquardt to consider an individual who was age 51 at his alleged onset date, 54 at the time of the ALJ hearing, and would be 55 the following month. The individual also has three years of post-secondary education, Blazek's past relevant work, and the following limitations:

> First one, a limit lifting to 20 pounds occasionally and 10 pounds frequently; stand and sit six hours each in an eight-hour work day; walk two blocks; non-exertional physical limits would be no ladder climbing; and rather than constant or frequent, just occasional stair climbing, balance, stoop, kneel, crouch, and crawl; rather than constant, frequent handling and fingering with the left upper extremity; and finally, occasional only exposure to extremes of cold, to humidity and wetness, to vibrations and to hazards such as heights and moving parts.

(R. 599-600) The VE indicated this individual could return to Blazek's past work as a funeral director, not as Blazek performed the job but as the job is described in the *Dictionary of Occupational Titles*. (R. 600)

The ALJ asked the VE to consider the same individual, but to limit standing and sitting to thirty minutes at a time with a slight positional change. The VE stated the individual still could perform the funeral work. (*Id.*)

The ALJ asked the VE to assume the same individual, but to limit handling and fingering with the left hand to occasionally. The VE stated if the individual were right-handed, he still could perform the funeral work. (*Id.*) However, if the individual were unable to sustain an eight-hour workday, he would be unable to perform the job. (R. 601)

9

### *4. The ALJ's decision*

The ALJ found Blazek to have a severe impairment consisting of "discogenic and degenerative disorder of the spine, status post two lumbar fusion surgeries." (R. 19) However, he found this impairment did not meet the Listing level of severity. (R. 20)

He further found Blazek to have non-severe impairments consisting of "irritable bowel syndrome, hyperlipidemia, anemia, hearing loss, coronary artery disease, and left hand numbness." (R. 19-20) The ALJ found none of Blazek's non-severe impairments caused any significant limitations in his ability to perform basic work activities. (R. 20)

The ALJ assessed Blazek's residual functional capacity ("RFC") as follows:

> [T]he undersigned finds that claimant has the residual functional capacity to perform the exertional and nonexertional work-related activities except that he can lift no more than twenty pounds occasionally and no more than ten pounds frequently. He can sit and stand 30 minutes at a time for six hours each in a 9-hour workday with slight positional changes after 30 minutes. He can occasionally climb stairs, kneel, crouch, crawl, balance and stoop; but he can never climb stairs. He can frequently, but not constantly, handle and finger with his left upper extremity. He can only have occasional exposure to extremes of cold, humidity, wetness, vibrations, and hazards such as unprotected heights and moving machinery.

(*Id.*) Based on this RFC, the ALJ concluded Blazek could return to his past relevant work as a funeral home director, not as Blazek performed the job but as the job generally is performed in the national economy. (R. 22) He therefore concluded Blazek is not disabled. (R. 22-23) In reaching this decision, the ALJ noted Blazek has a good work history as a correctional officer, but he cannot return to that job due to the exertional requirements. He further opined Blazek "may not be highly motivated to seek other less remunerative employment that would accommodate his current restrictions, especially

since [he] received a substantial worker's compensation settlement due to his back injury."[1] (R. 22)

## III. DISABILITY DETERMINATIONS, THE BURDEN OF PROOF, AND THE SUBSTANTIAL EVIDENCE STANDARD

### A. *Disability Determinations and the Burden of Proof*

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *Hillier v. Social Security Admin.*, 486 F.3d 359, 363 (8th Cir. 2007); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits

---

[1] The record indicates Blazek received a $200,000 worker's compensation settlement. *See* R. 21, 584.

11

the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, *supra*, 2007 WL 2593631 at *2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287, 98 L. Ed. 2d 119 (1987)).

The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)."); *accord Kirby, supra*, 2007 WL 2593631.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley*, 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon*, *supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that

there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

### *B. The Substantial Evidence Standard*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page* 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

14

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline*, *supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004);

*Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

On the issue of an ALJ's determination that a claimant's subjective complaints lack credibility, the Sixth and Seventh Circuits have held an ALJ's credibility determinations are entitled to considerable weight. *See, e.g., Young v. Secretary of H.H.S.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir. 1987)); *Gooch v. Secretary of H.H.S.,* 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075, 108 S. Ct. 1050, 98 L. Ed. 2d. 1012 (1988); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort or other disabling limitations simply because there is a lack of objective evidence; instead, the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *See Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). As the court explained in *Polaski v. Heckler:*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1) the claimant's daily activities;
> 2) the duration, frequency and intensity of the pain;
> 3) precipitating and aggravating factors;
> 4) dosage, effectiveness and side effects of medication;
> 5) functional restrictions.

*Polaski*, 739 F.2d 1320, 1322 (8th Cir. 1984). *Accord Ramirez v. Barnhart*, 292 F.3d 576, 580-81 (8th Cir. 2002). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

## IV.  DISCUSSION

Blazek argues that in finding he can return to his past work as a funeral director, the ALJ "unduly and unnecessarily failed to consider evidence of the vocational witness and other evidence of disability." Doc. No. 14, p. 2.  He asserts that his irritable bowel syndrome causes him to need close access to a bathroom, and he cannot predict the frequency or effects of his symptoms when they strike.  He also notes that he testified court reporting school "made his back too uncomfortable and he could not do it." *Id.*, p. 3.

The court first notes the inconsistency in the ALJ's RFC assessment.  The ALJ indicated, in the same sentence, that Blazek could "occasionally climb stairs," and "can never climb stairs." (R. 20)  However, this inconsistency, which the Commissioner refers to as a "typographical error," *see* Doc. No. 15, p. 12 n.5, is not fatal.

Little discussion is required here.  The record evidence fails to establish that Blazek is disabled due to his irritable bowel syndrome, or any combination of his impairments. Indeed, the record contains overwhelming evidence to support the ALJ's conclusion that Blazek could return to work as a funeral director, as that job is performed in the national economy.  *See Evans v. Shalala*, 21 F.3d 832, 833 (8th Cir. 1994) (claimant's past relevant work is not classified solely on the "actual functional demands and job duties of a particular past relevant job," but also on the "functional demands and job duties of the occupation as generally required by employers throughout the national economy"); *accord Barnett v. Barnhart*, 362 F.3d 1020, 1023 n.3 (8th Cir. 2004) (citing *Evans*).

## V. CONCLUSION

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[2] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be affirmed.

**IT IS SO ORDERED.**

**DATED** this 27th day of May, 2009.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.