IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| STEVEN EARL BLAZEK,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C08-3023-MWB<br><br>**ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

## *I. INTRODUCTION AND BACKGROUND*

The plaintiff, Steven Blazek, filed an application for Title II[1] disability insurance benefits, alleging a disability onset date of March 29, 2005. In his application, Blazek claimed that he was disabled due to pain from a workplace back injury, thirty percent hearing loss in both ears, irritable bowel syndrome, and heart problems. Blazek's application was denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held a hearing, as requested, on Blazek's claim on August 3, 2007. The ALJ issued a decision on November 30, 2007, which found that although Blazek suffers from severe impairments, he retains the functional capacity to return to his past relevant work as a funeral director, and therefore, is not disabled. On March 12, 2008, the Appeals Council denied his request to review the ALJ's decision, and this denial constituted a final decision of the Commissioner of Social Security ("Commissioner").

---

[1] Title II of the Social Security Act provides insurance benefits to covered individuals who establish that they suffer from a physical or mental disability. *See* 42 U.S.C. § 423.

On May 8, 2008, Blazek filed a complaint in this court seeking review of the Commissioner's decision (docket no. 2). The undersigned referred the case to Chief United Stated Magistrate Judge Paul A. Zoss for a report and recommendation. On May 27, 2009, once the parties had briefed the case, Judge Zoss issued a report and recommendation (docket no. 17). In his report and recommendation, Judge Zoss explained that the evidence in the record failed to establish that Blazek is disabled due to his irritable bowel syndrome or any combination of his impairments. Instead, Judge Zoss found overwhelming evidence in the record to support the ALJ's conclusion that Blazek could return to work as a funeral director. Neither party objected to Judge Zoss's report and recommendation.

## II. LEGAL STANDARDS

The court reviews a magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2008); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme

Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, the court reviews the magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*

3

*City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In applying this standard to review Judge Zoss's report and recommendation, the court must also be mindful of the standards upon which an appealed Commissioner's decision is reviewed. If appealed, the court reviews the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Page*, 484 F.3d at 1042 (quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). Therefore, the court will consider whether Judge Zoss's determinations are clearly erroneous, while keeping in mind that the ALJ must have substantial evidence in support of his factual findings.

### III. LEGAL ANALYSIS

Judge Zoss found that the record failed to establish Blazek is disabled due to irritable bowel syndrome or any combination of impairments. *See* docket no. 17. According to Judge Zoss, the record contains overwhelming evidence to support the ALJ's conclusion that Blazek could return to work as a funeral director, as the job is performed

in the national economy. *See id.* (citing *Evans v. Shalala*, 21 F.3d 832, 833 (8th Cir. 1994) ("claimant's past relevant work is not classified solely on the 'actual functional demands and job duties of a particular past relevant job,' but also on the 'functional demands and job duties of the occupation as generally required by employers throughout the national economy'"); *Barnett v. Barnhart*, 362 F.3d 1020, 1023 n.3 (8th Cir. 2004)). Because the parties did not file objections to Judge Zoss's report and recommendation, the court will turn to an evaluation of whether Judge Zoss's finding—that there is overwhelming evidence to support the ALJ's conclusion that Blazek could return to past relevant work—is clearly erroneous. *See Grinder*, 73 F.3d at 795.

An ALJ evaluates a claimant's disability under the familiar five-step analysis found in 20 C.F.R. § 404.1520. *See Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003). This process requires the Commissioner to perform a "sequential evaluation process. . . [in] a series of five steps. . . ." 20 C.F.R. § 404.1520(4). "If [the ALJ] can find that [the claimant is] disabled or not disabled at a step, [her or she] make[s the]determination or decision and [does] not go on to the next step." *Id.* If a finding cannot be made, the ALJ goes to the next step. *See Id.* In this case, step one through three are not at issue. Instead, the ALJ found that Blazek was not disabled at step four—because he was able to perform his past relevant work as it is performed in the national economy—and therefore did not go on to step five. R. at 22. If an ALJ would fail to make such a finding in step four, in step five "the burden shifts to the [ALJ] to prove that there are other jobs in the national economy that the claimant can perform." *Hines v. Astrue*, 2009 WL 764152, *2 (8th Cir. 2009) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).

According to the ALJ, Blazek is capable of performing past relevant work as a funeral home director as the job is generally performed in the national economy but not as Blazek previously performed it. The Eighth Circuit Court of Appeals has explained that

5

"the ALJ may determine a claimant can perform the claimant's past occupation based on 'the functional demands and job duties of the occupation as generally required by the employers throughout the national economy.'" *Barnett*, 362 F.3d at 1023, n.3. (quoting *Evans*, 21 F.3d at 833-34 (in turn quoting Titles II and XVI: Past Relevant Work-The Particular Job or the Occupation as Generally Performed, SSR[2] 82-61); *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007) ("The ALJ will find that a claimant is not disabled if he retains the [residual functional capacity ("RFC")] to perform . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy") (citing *Jones v. Chater*, 86 F.3d 823, 826 (1996) (in turn citing *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)). The ALJ may consider "vocational expert [("VE")] testimony at step four of the evaluation process." *Wagner*, 499 F.3d at 853 (citing *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir.1994)).

In step four of this case, the VE found that, based on the hypothetical presented by the ALJ, Blazek could perform the light work required for the funeral director job in the Dictionary of Occupational Titles ("DOT"), but not the heavy work Blazek described in his past funeral work. Based on Blazek's account of his capabilities, along with the ALJ's adjustment of Blazek's abilities, due—in part—to a valid credibility assessment, *see* R. at 21-22, the court agrees with Judge Zoss's finding that neither irritable bowel syndrome[3]

---

[2] Social Security Rulings "are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] have adopted." 20 C.F.R. § 402.35(b)(1).

[3] Blazek stated, concerning his irritable bowel syndrome:
>  [I]t's not a daily occurrence, but when it affects me, it's, it's
>  out of the blue and, and without warning affect – it kind of

(continued…)

nor any combination of Blazek's impairments prevents him from performing the light work required by the DOT funeral director position. However, the alleged discrepancy in job duties and strength demands for Blazek's actual past relevant work in funeral homes and the DOT's definition for funeral director, prompts the court to further analyze whether application of the DOT definition for funeral director was appropriate in this case.

An ALJ cannot use generic or overly broad occupational classifications because they "often involve quite different functional demands and duties requiring varying abilities and job knowledge." *Evans*, 21 F.3d at 834. However, Social Security Rule ("SSR") 82-61, referenced by the *Evans* court, anticipates "some individual jobs may require somewhat more or less exertion than the DOT descriptions. A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." Titles II and XVI: Past Relevant Work-The Particular Job or the Occupation as Generally Performed, SSR 82-61. Alternatively, some claimants will have held jobs with "significant elements of two or more occupations," which are labeled "composite jobs." *Id*. These jobs, "as such, have no counterpart in the DOT." *Id*. When a claimant's past relevant work is considered a composite job, the court should "evaluate [the situation] according to the particular facts of each individual case." *Id*.

---

$^3$(…continued)
        started affecting me today. And when it happens, I – about through the two rooms of my house to get to the bathroom is about what time I have. . . .[it occurs] probably at least a time or two in a month.

R. at 593.

7

The Dictionary of Occupational Titles states the following duties for funeral director in the national economy:

> Coordinates activities of workers to remove body to mortuary for embalming. Interviews family or other authorized person to arrange details, such as preparation of obituary notice, selection of urn or casket, determination of location and time of cremation or burial, selection of [pallbearers], procurement of official for religious rites, and transportation of mourners. Plans placement of casket in parlor or chapel and adjusts lights, fixtures, and floral displays. Directs [pallbearers,] in placement and removal of casket from hearse. Closes casket and leads funeral cortege to church or burial site. Directs preparations and shipment of body for out-of-state burial. May prepare body for interment. . . .

Dictionary of Occupational Titles, Code 187.167-030 (available at http://www.occupationalinfo.org/18/187167030.html). At his hearing, Blazek described the funeral director duties that he would be unable to perform due to his impairments:

> Well, after 20 years of doing it, I could not make any removals of human remains from any place. I could not move caskets around. I would not be able to stand up in front of the church as some times required for – or 10 to 20 minutes at a time. I would not be able to perform the function that was always required of me during the visitation for a seven to ten-hour period of time, standing at the front door greeting people. About the only thing I can think of that I could do would be making – as far as the standing and lifting, would be sitting and making arrangements. But the, the irritable bowel problem and – that's just a small part of it anyway, is making of arrangements. I never worked for anybody that would allow you just to do that.

R. at 602. Apparently, Blazek had performed several of the tasks that, under the Dictionary of Occupational Titles ("DOT"), are performed by other individuals, such as

the funeral attendant[4], at the direction of the funeral director. For example, according to the DOT, the funeral attendant—not the funeral director—is responsible for moving the casket into the parlor or chapel. Similarly, the DOT funeral director definition anticipates that "workers" will move the bodies.

Although Blazek's actual work as a funeral director required duties in addition to those listed in the DOT funeral director definition, and greater strength demands, the application of the DOT funeral director definition is not clearly erroneous. First, the title of funeral director is not generic or overly broad, but instead is a precise definition that simply fails to encompass all of the duties that Blazek claims he performed as a funeral director. *See Evans*, 21 F.3d at 834 (the use of "broad generic, occupational classification of [the] job, *e.g.*, 'delivery job,' 'packaging job,' etc., . . .is likely to be fallacious and unsupportable. While 'delivery jobs,' or 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.") (quoting SSR 82-61). Further, the additional duties

---

[4] The Dictionary of Occupational Titles provides the following definition for funeral attendant:
> Places casket in parlor or chapel prior to wake or funeral service and arranges floral offerings and lights around casket, following instructions of [funeral director] or [embalmer]. Directs or escorts mourners to parlor or chapel in which wake or funeral is held. Assists [funeral director] to close coffin. Carries flowers to hearse or limousine for transportation to place of interment. Assists mourners into and out of limousines. Issues and stores funeral equipment, such as casket lowering devices and grass mats used at place of interment. May carry casket. . . .

Dictionary of Occupational Titles, Code 359.677-014 (available at http://www.occupationalinfo.org/35/359677014.html).

9

involved in Blazek's actual funeral work can be reasonably considered "duties significantly in excess of those generally required for the job," anticipated by SSR 82-61. Blazek's job required him to perform funeral director duties but, presumably due to a smaller scale funeral home, he had to perform additional duties typically performed by other employees. Lastly, although Blazek's actual funeral home work might reasonably be considered a composite job—as it appears to involve duties of at least the DOT funeral director and funeral attendant positions—Blazek did not challenge the application of the funeral director title but only seemed to dispute whether there were employers that would allow a funeral director to perform only light lifting. *See* R. at 602 (Blazek claimed that he would only be able to make arrangements and stated that he "never worked for anybody that would allow you just to do that."). However, Blazek's experience with what past employers would allow is not determinative. First, and as discussed above, the ALJ may apply DOT position descriptions that describe with sufficient accuracy the claimant's past relevant work as performed in the national economy. *See Evans*, 21 F.3d at 833. Second, Blazek claimed that he owned his own funeral home at one time, *see* R. at 602, and would not have been subject to the confines of an employer's job description. Third, even if the DOT position was uncommon—and there is nothing in the record to establish that funeral director positions under the DOT are uncommon—at step four there is no requirement that a "particular job . . . exist in significant numbers in the national economy in order to constitute past relevant work." *Rater v. Chater*, 73 F.3d 796, 799 (8th Cir. 1996) (citing SSR 82-61).

THEREFORE, Judge Zoss's conclusion that there was overwhelming evidence[5] in the record to support the ALJ's finding is not clearly erroneous. The court **accepts** Judge Zoss's report and recommendation (docket no. 17) and **affirms** the Commissioner's decision that Blazek is not disabled.

**IT IS SO ORDERED.**

**DATED** this 6th day of July, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[5] The court recognizes that a finding of only "substantial evidence on the record as a whole," is needed to affirm the ALJ's decision. *Page*, 484 F.3d at 1042.